**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOUGLAS MELTER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Civ. No.**  **15-243 Erie** |
| **vs.** | ) | **Crim. No.**  **13-12 Erie** |
| | ) | |
| **UNITED STATES OF AMERICA.** | ) | |
| | ) | |

## OPINION

Mark R. Hornak, Unites States District Judge

Pending before the Court is Petitioner Douglas Melter's *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 [ECF 47] ("Petitioner's Section 2255 Motion"), Motion to Appoint Counsel [ECF 51] and Motion for Discovery [ECF 52].

### I. BACKGROUND

On August 12, 2013, Petitioner was sentenced to a term of imprisonment of 360 months (30 years). The term of imprisonment consisted of 360 months at Count 1 and 120 months at Counts 2 and 3, to be served concurrently to Count 1. He appealed the Judgment and on February 25, 2015, the Court of Appeals granted the United States' Motion to Enforce Appellate Waiver by Summary Action. On October 2, 2015, Mr. Melter timely filed this Section 2255 Motion. In Petitioner's Section 2255 Motion, he sets forth twenty-three (23) arguments in support of his general contention that his Sixth Amendment right to counsel was violated because of his trial counsels' ineffective assistance of counsel at various stages throughout their representation of Petitioner.

In particular, Mr. Melter argues that his counsel rendered ineffective assistance of counsel in that they: (1) failed to file a motion for discovery or otherwise attempt to secure discovery from the Government ("Claim 1"); (2) failed to conduct any pretrial investigation or discovery ("Claim 2"); (3) failed to file a motion to suppress the revolver found in Petitioner's residence ("Claim 3"); (4) failed to file a motion to suppress the bullets found in Petitioner's residence ("Claim 4"); (5) failed to file a motion to suppress the receipts for ammunition that were found in Petitioner's residence ("Claim 5"); (6) failed to investigate that the bullets found in the Petitioner's residence are incompatible with the revolver found in Petitioner's residence ("Claim 6"); (7) advised Petitioner to sign a consent to search his vehicle ("Claim 7"); (8) failed to file a motion to suppress the laptop found in Petitioner's automobile ("Claim 8"); (9) failed to file a motion to suppress the cell phone found in Petitioner's automobile ("Claim 9"); (10) failed to interview four witnesses who allegedly were willing to testify to the fact that the revolver used to charge Defendant in Count 3 of the Indictment had been removed from a rental property and moved to Defendant's residence without his knowledge ("Claim 10"); (11) failed to investigate the history of the revolver found in Petitioner's residence ("Claim 11"); (12) failed to report prosecutorial misconduct on the part of the prosecutor or lied in order to cover up their ineffectiveness by stating that the prosecutor had engaged in prosecutorial misconduct ("Claim 12"); (13) leaving Petitioner alone during his interrogation by the police when he was first arrested after instructing him that the FBI agents would bring some paperwork that Petitioner needed to sign and telling Petitioner that bail might be possible if he offered information to law enforcement officers ("Claim 13"); (14) advised Petitioner to accept the plea deal when he received no measurable benefit from it ("Claim 14"); (15) advised Petitioner that by entering into the plea agreement, he would have an offense level or 32 or 33 and a criminal history IV, such

2

that his sentencing guideline range would be 151 to 210 months ("Claim 15"); (16) failed to file

for a motion for severance of Counts 1 and 2 from Count 3 ("Claim 16"); (17) failed to subject

the prosecution's case to meaningful adversarial testing due to all of the conduct/misconduct

alleged in the 2255 motion ("Claim 17"); (18) failed to discuss or review the Presentence Report

with Petitioner during the time allotted for making objections ("Claim 18"); (19) failed to

investigate the government's witness ("Claim 19"); (20) failed to investigate, research, or present

any mitigating evidence ("Claim 20"); (21) without obtaining permission, turned over

Petitioner's psychiatric report to the prosecution ("Claim 21"); (22) failed to file a notice of

appeal ("Claim 22"); and (23) did not understanding facts of law relevant to Count 3 of the

Indictment and the differences between possession and constructive possession of a firearm

("Claim 23"). Petitioner's Section 2255 Motion, pp. 14-47.

The United States opposes Petitioner's Section 2255 Motion, arguing that Petitioner

waived his right to file a collateral appeal such as the pending § 2255 Motion pursuant to the

terms of the parties' plea agreement, and therefore, "[t]his Court should enforce the collateral

challenge waiver and refuse to entertain the merits of Melter's ineffective assistance of counsel

claims." See Government's Response, p. 1. In support, the Government contends that

Petitioner's waiver of his collateral appeal rights was knowing and voluntary and that

enforcement of the waiver will not result in a miscarriage of justice. Id. at pp. 5-12. The

Government further argues that "the Third Circuit has noted that a waiver does not '"become []

unenforceable simply because a defendant "claims" . . . ineffective assistance," but only "if the

record of the criminal proceeding revealed that the claim that the waiver was the result of

ineffective assistance of counsel was meritorious"'." Id. at p. 9 (quoting U.S. v. Akbar, 181 Fed.

Appx. 283, 286-87 (3d Cir. 2006) (quoting U.S. v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)

3

The Government then argues that Petitioner's 14th Claim, "that counsel's advice to accept the plea deal was ineffective [because] he received no benefit from the plea agreement, because even though he received a three point reduction in offense level, his sentencing guideline range did not change," does not result in a miscarriage of justice. Id. at pp. 9-12. The Government concludes with a request that "[i]n the event this Court refuses to enforce the waiver, the Government requests additional time to respond to the merits of Melter's ineffectiveness claims." Id. at. p. 12

Petitioner has replied to the Government's Response. See Petitioner's Response to Government's Response ("Petitioner's Reply Brief"). In Petitioner's Reply Brief, Petitioner first states: "[t]he petitioner acknowledges [that the plea contained a waiver against collateral attack] but argues that the plea itself, and therefore the waiver, are the result of ineffective assistance of counsel. The waiver then does not prevent petitioner from filing a motion under 28 USC §2255." Petitioner's Reply Brief, pp. 2-3. With respect to this argument, Petitioner continues:

> As seen in petitioner's motion, defense counsel advised defendant to plead guilty and sign said plea containing the waiver without performing any investigation into any part of the government's case (including failing to file for, or acquire, discovery), failed to interview or question a single witness, and failed to submit any part of the government's case to meaningful adversarial testing.
>
> . . .
>
> In the totality of circumstances of this case, counsel's lack of investigation, lack of preparation and his failure to make an informed evaluation of a potential viable defense, when taken together amount[s] to ineffective assistance of counsel. The petitioner's plea could not have been knowing[ly] and understand[a]bly made and was the product of ineffective assistance of counsel.

Id. at p. 4. See also id. at p. 5 ("[h]ad counsel performed their duties effectively, the petitioner would have demanded a trial by jury and refused to sign the plea deal. . . . This alone satisfies the two prong test of Strickland."); id. at p. 6 ("[d]ue to defense counsel's total der[e]liction of duties and responsibilities," there was a miscarriage of justice in this case.). Additionally, with

4

respect to Claim 14, Petitioner contends: [t]he government's claim of benefit is unsupported and grossly inaccurate. A review of the court records and the plea deal will show that there never was an agreement concerning the plea and 18 USC § 2251A(b). The petitioner was never made aware of such a deal, and with no proof that this supposive agreement ever took place the government cannot now, almost three years later, claim that this charge was a benefit of the plea." Id. at p. 12.

II. **LEGAL ANALYSIS.**

A. **The Need for an Evidentiary Hearing, Fact Discovery, and Appointment of Counsel.**

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack an otherwise final sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petitioner bears the burden of demonstrating his right to relief under § 2255. Randle v. U.S., 954 F.Supp.2d 339, 349 (E.D. Pa. 2013).

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. See 28 U.S.C. § 2255(b); U.S. v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005); U.S. v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

5

The threshold Petitioner must meet to obtain an evidentiary hearing is considered to be "reasonably low." Booth, 432 F.3d. at 546. In considering a motion to vacate a defendant's sentence, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record'." Johnson v. U.S., 294 Fed.Appx. 709, 710 (3d Cir. 2008) (quoting Booth, 432 F.3d at 545-46). The district court, however, without further investigation may dispose of "vague and conclusory allegations contained in a § 2255 petition." Id.

For the reasons set forth below, based upon a review of the Petitioner's Section 2255 Motion, the files and the record in this case, Petitioner's 2255 Motion is without merit, and no evidentiary hearing is necessary. The Court further concludes that permitting fact discovery would have no substantive effect on Petitioner's Section 2255 Motion and that because Petitioner's Section 2255 Motion is without merit and no evidentiary hearing is necessary in this matter, appointment of counsel for Petitioner is unnecessary. Accordingly, Petitioner's Motions to Appoint Counsel and for Discovery will be denied.

**B.     Petitioner's Waiver of Collateral Rights in Plea Agreement.**

The Court turns first to the effect of Petitioner agreeing in his Plea Agreement to waive his right to file a Motion to Vacate Sentence under 28 U.S.C. § 2255. See March 20, 2013 Plea Agreement, ¶ A(9) ("DOUGLAS E. MELTER further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."). As noted above, the Government argues that Petitioner's Motion should be dismissed because Mr. Melter waived his right to collaterally challenge his conviction and sentence and Petitioner disagrees, arguing that absent his defense counsels' ineffective assistance of counsel, he would not have pleaded guilty

6

pursuant to the Plea Agreement and instead gone to trial and therefore, manifest injustice will result if the Court enforces his waiver of his collateral rights.

In U.S. v. Hlushmanuk, 2014 WL 5780814 (E.D. Pa. Nov. 6, 2014), the Court succinctly explained:

> The United States Court of Appeals for the Third Circuit has held that a waiver of appellate or collateral attack rights is enforceable provided that: (1) [the waiver] was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice. *United States v. Goodson,* 544 F.3d 529, 536 (3d Cir.2008) (citing *United States v. Jackson,* 523 F.3d 234, 243–44 (3d Cir. 2008)); *see also United States v. Shedrick,* 493 F.3d 292, 297–98 (3d Cir. 2007); *United States v. Khattak,* 273 F.3d 557, 562–63 (3d Cir. 2001).
>
> To evaluate whether enforcement of a waiver would result in a miscarriage of justice, the Third Circuit has adopted a number of factors that must be considered, including: "'the clarity of the error, its gravity, its character ..., the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.' "*Khattak,* 273 F.3d at 563 (quoting *United States v. Teeter,* 257 F.3d 14, 25–26 (1st Cir. 2001)). While the miscarriage of justice determination is open-ended, the Third Circuit has specifically observed that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea ... would result in a miscarriage of justice." *Shedrick,* 493 F.3d at 298. It has similarly noted that "it would constitute a miscarriage of justice to enforce a guilty plea made pursuant to a plea agreement if the defendant should have been permitted to withdraw [the plea]." *United States v. Wilson,* 429 F.3d 455, 458 (3d Cir. 2005).
>
> At the same time, circumstances in which an uncorrected error results in a miscarriage of justice are "unusual," *Khattak,* 273 F.3d at 562, and the "miscarriage of justice" exception must be "'applied sparingly and without undue generosity.' "*Wilson,* 429 F.3d at 458 (quoting *Teeter,* 257 F.3d at 26). Indeed, as the Third Circuit has recognized: "'Waiver would be nearly meaningless if it included only those appeals that border on the frivolous.... While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.'" *Khattak,* 273 F.3d at 562 (quoting *United States v. Howle,* 166 F.3d 1166, 1169 (11th Cir. 1999)).

Hlushmanuk, 2014 WL 5780814, at *2. In reviewing a petitioner's collateral waiver, the court

has "an independent obligation to conduct an evaluation of the validity of a collateral waiver"

based on the record evidence before it. U.S. v. Mabry, 536 F.3d 231, 237-238 (3d Cir. 2008).

### 1. Knowing and Voluntary Nature of the Waiver.

In order to determine whether Petitioner's waiver of his right to file a Motion to Vacate

Sentence under 28 U.S.C. § 2255 was knowing and voluntary, the Court must "scrutinize the

colloquy" to determine whether "the district court 'inform[ed] the defendant of, and determine[d]

that the defendant underst[ood] ... the terms'" of the waiver. Mabry, 536 F.3d at 238–39 (quoting

Fed.R.Crim.P. 11(b)(1)(N)). The United States Court of Appeals has "uniformly upheld the

validity of appellate waivers where the district court engaged in an appropriate plea colloquy

under Rule 11." U.S. v. Lawton, 640 Fed. Appx. 146, 150 (3d Cir. Jan. 11, 2016) (citing Mabry;

U.S. Gwinnett, 483 F.3d 200, 204–05 (3d Cir. 2007); U.S. v. Schweitzer, 454 F.3d 197, 203 (3d

Cir. 2006); U.S. v. Khattak, 273 F.3d 557, 560 (3d Cir. 2001).

Turning to the plea colloquy in this case, Petitioner was first determined to be competent

to plead. Transcript of March 20, 2013 Change of Plea ("Plea Transcript"), p. 4. The Court then

explained to Petitioner what his rights would be if he went to trial. Plea Transcript, pp. 4-7. All

three counts of the Indictment were read to Petitioner, and the Court explained what the

Government would have to prove at trial with respect to all three counts of the indictment. Id. at

pp. 10-12.

The Court also explained the penalties to which Petitioner would be subjected for each of

the three counts of the Indictment (Count 1-"imprisonment of not less than 10 years and not

more than life;" Count 2 –"[i]mprisonment of not more than ten years," [unless the defendant]

has a prior conviction under [certain enumerated federal statues or certain types of state statutes],

then "imprisoned not less than ten years nor more than twenty years"); and Count 3 – "a term of imprisonment of not more than ten years"). Id. at pp. 12-14. When the Court asked Petitioner if he understood the maximum penalties applicable to the crimes charged in the Indictment, as to each Count, Petitioner stated "Yes." Id. at pp. 12 (Count 1), 13 (Count 2), and 14 (Count 3).

The terms of the Plea Agreement were then discussed. Id. at p. 12-13. Notably, Paragraph A(9) of the Plea Agreement stated that Petitioner agreed to "waive[] the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." Plea Agreement, ¶ A(9). The Government expressly discussed this paragraph of the Plea Agreement, stating: "Mr. Melter waives the right to file a motion to vacate sentence under Title 28, United States Code, Section 2255, attacking his conviction or sentence. He also waives the right to file any other collateral proceeding attacking his conviction or sentence. In exchange, the United States will recommend a three-level reduction in his offense level for his timely acceptance of responsibility." Id. at p. 16.

The Court then queried: (1) "Mr. Melter, before you came to court today, did you have an opportunity to read and review the plea agreement?; (2) "Did you discuss it with your lawyer?;" (3) "Do you agree with its terms and conditions?;" (4) "Do you understand the terms and conditions?;" (5) "Do you understand that by affixing your signature to the plea agreement, you are attesting again to the fact, by virtue of your signature, that you agree with the terms and conditions?;" and (6) "Do you also understand that under the terms and conditions of the plea agreement, you've also waived your right to collaterally attack these proceedings through any type of Habeas Corpus petition on any grounds, do you understand that?". Id. at pp. 16-18. To each and every one of these questions, Petitioner answered "Yes." Id.

9

The Court further asked Petitioner "Do you understand that the court is not required to accept the plea agreement that you have entered into and may reject it. If the court rejects the plea agreement, you will be advised in open court, and you will have the opportunity to withdraw your guilty plea. If the plea agreement is rejected, you may nevertheless continue your plea of guilty, and if you persist in your guilty plea after the plea agreement is rejected, your sentence, or the disposition of your case, may be less favorable to you than that proposed in the plea agreement; do you understand that?" Id. at p. 18. Petitioner answered "Yes." Id.

The Court then asked: "Do you understand that the offense to which you are pleading guilty today is a felony offense; and if your plea is accepted, you will be adjudged guilty of that offense, that such adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any type of firearm; do you understand that?." Id. Petitioner answered "Yes." Id.

The Court next queuried: (1) "Have you and your counsel talked about how the Sentencing Guidelines might apply to your case?;" (2) "Do you understand that the court will not be able to determine the guideline sentence for your case until after the presentence report has been completed, and you and the government have had an opportunity to challenge the facts reported by the probation officer?;" (3) "Do you understand that after it has been determined what guideline sentence does apply to a case, the judge has the authority, in some circumstances, to impose a sentence that is more severe or less severe than that called for by the guidelines?;" (4) "Do you understand that parole has been abolished, if you are sentenced to a term of imprisonment, you will not be released on parole?;" and (5) "Do you understand that if the sentence is more severe than you expected, you will still be bound by your guilty plea and you

will have no right to withdraw it?" Id. at pp. 19-20. Petitioner responded "Yes" to each of these questions. Id.

The Court next asked: (1) "Except for your discussions with your counsel about Sentencing Guidelines, has anybody made any prediction or promise to you about what your sentence will be?;" (2) "Has anything I've said here today suggested to you what your actual sentence will be?;" and (3) "Have you been instructed by your counsel, by government counsel, or by anybody else to respond untruthfully to any question about a promised sentence?". Id. at p. 20. Petitioner responded "No" to each of these questions. Id.

The Court ultimately concluded:

> Mr. Melter, because you acknowledge that you are in fact guilty as charged in Counts One, Two and Three, and because you know about your right to a trial, because you know what the maximum possible penalties are, and because you are voluntarily pleading guilty, I will accept your guilty plea and enter a judgment of guilty on your plea to Counts One, Two and Three of Indictment No. 13-12 Erie.

> It is therefore the finding of the court in the case of United States v. Douglas E. Melter that the defendant is fully competent and capable of entering an informed plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements thereof and that, therefore, the plea is accepted and the defendant is now adjudged guilty of the charges contained in the indictment.

Id. at p. 33. The Plea Agreement then was executed by Petitioner and his counsel signing the document. Id. See also Plea Agreement, p. 5.

Based upon the above, it is clear that the Court "explained the waiver [of his collateral rights] to [Mr. Melter] and he signed the agreement, acknowledging that he understood its terms." See U.S. v. Fazio, 795 F.3d 421, 425 (3d Cir. 2015). Further, the Court specifically discussed the effects of the collateral waiver with Petitioner in detail, and he affirmed his understanding of that provision and that he was agreeing to this condition. See U.S. v. Chavez

11

Pereira, 525 Fed.Appx. 120, 122 (3d Cir. 2013). Likewise, the Court affirmed that Petitioner voluntarily entered into the plea agreement and accepted its collateral-review waiver without coercion or external promise. See Fazio, 795 F.3d at 425-26. See also Chavez Pereira, 525 Fed.Appx. at 122-23 ("In the instant case, [defendant] knowingly and voluntarily signed the plea agreement which clearly informed him that he was waiving his right to direct and collateral appeals under certain conditions. Moreover, during [defendant's] plea hearing, the Court discussed the effects of the appellate waiver with [defendant] in detail. [Defendant] stated to the Court that he had discussed the appellate waiver with counsel, and was duly informed of its consequences. Therefore, there are no viable appellate issues with respect to the appellate waiver."); U.S. v. Ochoa-Hernandez, 323 Fed.Appx. 134, 137 (3d Cir. 2009) ("After reviewing the transcript of the plea colloquy, we conclude that the District Court thoroughly advised [defendant] of all of the above issues, that [defendant] indicated that he understood the consequences of his plea, and that he entered his plea knowingly and voluntarily. Therefore, this issue lacks merit").

As such, the Court concludes that Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence or conviction, including his right to file a Motion to Vacate pursuant to 28 U.S.C. § 2255 such the one current pending before this Court. Therefore, Petitioner's Section 2255 Motion must be denied unless Petitioner can show that a specific exception set forth in the Plea Agreement is applicable to any of the claims contained in his Section 2255 Motion or that enforcing the collateral rights waiver would work a "miscarriage of justice."

2. **Applicability of Any Specific Exception set forth in the Plea Agreement to Petitioner's claims.**

Having examined the terms of the Plea Agreement and Petitioner's twenty-three (23) claims of ineffective assistance of counsel contained in his Section 2255 Motion, the Court concludes that there are no exceptions set forth in the Plea Agreement that are applicable to Petitioner's claims.

**3. Miscarriage of Justice Due to Ineffective Assistance of Counsel.**

Thus, the Court turns to whether enforcing the collateral waiver would result in a miscarriage of justice. As stated above, in determining whether enforcing the collateral waiver would result in a miscarriage of justice, the Court should apply a "common sense approach," and the exception, "will be applied sparingly and without undue generosity." Mabry, 536 F.3d at 242; Wilson, 429 F.3d at 458. Further, in determining whether a waiver does work a miscarriage of justice, the Court should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Mabry, 536 F.3d at 242-243 (quoting Teeter, 257 F.3d at 25-26).

Our Court of Appeals has suggested that a miscarriage of justice could arise when a defendant's attorney was "ineffective or coercive in negotiating the very plea agreement that contained the waiver." Id. at 243. "[A] waiver does not "become[ ] unenforceable simply because a defendant 'claims' ... ineffective assistance," [however,] but only 'if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective

assistance of counsel was meritorious'." U.S. v. Akbar, 181 Fed. Appx. 283, 286-76 (3d Cir. May 24, 2006) (quoting U.S. v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)).

"A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984)). A court's evaluation of the attorney's actions "must be highly deferential," and those actions must be assessed under the circumstances at the time of representation without the benefit of hindsight. Id. at 689. "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694). Indeed, as explained by the Third Circuit court in U.S. v. Bui, 795 F.3d 363 (3d Cir. 2015):

> The year after deciding *Strickland,* the Supreme Court slightly modified the prejudice prong of the *Strickland* test in connection with guilty pleas. *See Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366 (internal quotations omitted). The Court has re-emphasized that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper,* ——U.S. ——, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012).

Bui, 795 F.3d at 367.

An ineffective assistance of counsel claim fails if a petitioner cannot demonstrate either prong of the Strickland test. Strickland, 466 U.S. at 700. In other words, the Court does not need to address both deficiency and prejudice—if either element is not satisfied, the analysis may end there, Booth, 432 F.3d at 546. Indeed, our Court of Appeals has held that district courts may examine the prejudice prong of the Strickland test before evaluating whether counsel's

14

performance was constitutionally deficient. See Booth, 432 F.3d at 546; McAleese, 1 F.3d at 170.

### a. Petitioner's Ineffective Assistance of Counsel Claims 12, 13, 20 and 22.

Turning to Petitioner's ineffective assistance of counsel claims, we will first address Claims 12, 13, 20 and 22. See Petitioner's Section 2255 Motion, pp. 32-33, 43, and 45-46. After raising Claim 12 (defense counsel failed to report prosecutorial misconduct on the part of the prosecutor or lied in order to cover up their ineffectiveness by stating that the prosecutor had engaged in prosecutorial misconduct); Claim 13 (defense counsel left Petitioner alone during his interrogation by the police when he was first arrested after instructing him that the FBI agents would bring some paperwork that Petitioner needed to sign and telling Petitioner that bail might be possible if he offered information to law enforcement officers; Claim 20 (defense counsel failed to investigate, research, or present any mitigating evidence) and Claim 22 (defense counsel failed to file a notice of appeal), Petitioner stated with respect to Claims 12, 13 and 20, that he was not attempting to show that they "meet Strickland's second prong of prejudice" and as to Claim 22, that he has not attempted "to show prejudice in this claim." See id. at pp. 32, 33, 43, and 45.

In light of Petitioner's acknowledgment that he has not established that he suffered any prejudice as a result of defense counsels' alleged conduct underlying these claims, the Court concludes that Petitioner has not established, through Claims 12, 13, 20 or 22, that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

**b. Petitioner's Ineffective Assistance of Counsel Claims Related to Counsels' Conduct Prior to the Plea Agreement Being Entered Into by the Parties - Claims 1-11, 14-17, 19, and 23.**

The Court next turns to Petitioner's numerous arguments concerning how defense counsel rendered ineffective assistance of counsel in their representation of Petitioner leading up to their advice to Petitioner to accept the plea deal offered by the Government such that his guilty plea could not have been knowing and voluntary, including his agreement to waive his rights to file a collateral appeal. Addressing first Petitioner's claim that defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal which required him to plead guilty to all three counts of the Indictment when there was no benefit to him so pleading ("Claim 14"), in response, the Government argues that Petitioner's contention is incorrect and that he did receive a substantial benefit from entering into the Plea Agreement. Government's Response, p. 4. "[T]he plea agreement provided Melter with a substantial benefit – the opportunity to avoid a mandatory 30 year minimum sentence and a potential life sentence. If Melter has not pled guilty to all three charges in the indictment, the Government would have sought to supersede the indictment with the additional charge of buying a child in violation of [18 U.S.C.] § 2251A(b), the penalty for which is a mandatory minimum term of imprisonment of 30 years to life." Id. at p. 4. The Government further states:

> The Government advised Melter's counsel that if he did not plead pursuant to the plea agreement, the Government would withdraw its plea offer and supersede the indictment with the additional charge of buying a child, the penalty for which is a **mandatory minimum term of imprisonment of 30 years to life.** [footnote omitted] 18 U.S.C. § 2251A(b). Pursuant to the plea agreement, Melter only faced a ten year mandatory minimum at Count 1, and ten year maximums at Counts 2 and 3. Moreover, had Melter not accepted the terms of the offered plea agreement, and the government had superseded the indictment, upon conviction, Melter's sentencing guideline would have been life imprisonment. The base offense level for buying a child is 38. U.S.S.G. § 2G2.3. As outlined in the PSR, Melter would

have received an additional one offense level for Counts 1 and 2, and an additional five levels for repeat and dangerous sex offender against minors pursuant to § 4B1.5. Thus, Melter's offense level under a superseding indictment, without acceptance of responsibility, would have been 44. With an offense level of 44, at any criminal history category, the applicable sentencing guideline range is life imprisonment.

Id. at p. 11. Critically, in Reply to the Government's argument, Petitioner does not dispute that

the Government informed defense counsel of its position, but instead states that he "was never

made aware of such a deal." See Petitioner's Reply, p. 12.

In U.S. v. Bui, *supra.*, the appellate court recently explained:

When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.' " *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir.2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992)), cert. denied, —— U.S. ——, 134 S.Ct. 1340, 188 L.Ed.2d 346 (2014). We have identified potential sentencing exposure as an important factor in the decision making process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent...." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir.2003). However, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir.2007).

Bui, 795 F.3d at 367. Accepting that the Government informed defense counsel that if Petitioner

did not plead guilty to all three counts of the Indictment it would withdraw the plea offer and

supersede the Indictment with the additional charge of buying a child, in violation of 18 U.S.C.

§2251A(b), the penalty for which is a mandatory minimum term of imprisonment of 30 years to

life, and that defense counsel did not tell Petitioner of the Government's intent to file a

superseding indictment if Petitioner did not accept the Plea Agreement offered, then defense

counsel's performance in such regards fell below an objective standard of reasonableness and it

is necessary to review whether Petitioner has shown a "reasonable probability" that the result of

17

the proceeding would have been different, i.e. that he would not have pleaded guilty and would have gone to trial had he been informed of the Government's intent to file a superseding indictment against him. Hill, 474 U.S. at 59. Upon review, the Court concludes that Petitioner has not advanced any persuasive basis to support a conclusion that he would have proceeded differently than he did and therefore, he has not shown a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. To the point, Petitioner's argument belies logic, in that it ignores the reality that even if Petitioner was not told of the Government's intentions had he not pled guilty, he plainly actually received a benefit from entering into the Plea Agreement, i.e. being subject to only a 10-year mandatory minimum sentence as opposed to a 30-year mandatory minimum sentence and a lifetime Guidelines sentence if the United States had filed a superseding indictment against Petitioner that added the additional charge of buying a child in violation of [18 U.S.C.] § 2251A(b). Therefore, with respect to his Claim 14, Petitioner has not established that he suffered any prejudice such that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next the Court will address Petitioner's claims that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal when they had failed to file a motion for discovery or otherwise attempt to secure discovery from the Government ("Claim 1") and when they advised Petitioner to accept a plea deal when they had failed to conduct any pretrial investigation or discovery ("Claim 2"). Petitioner's Section 2255 Motion, pp. 14-17.

With respect to Petitioner's claims that defense counsel rendered ineffective assistance of counsel when they failed to file a motion for discovery or otherwise attempt to secure discovery

from the Government ("Claim 1") and failed to conduct any pretrial investigation or discovery ("Claim 2"), Petitioner's allegations are vague, conclusory, and unsupported by facts. Petitioner does not tell the Court what discovery or investigatory path defense counsel should have pursued that would have altered his decision to plead guilty pursuant to the Plea Agreement and instead go to trial. "Appeal waivers would be meaningless if they were rendered unenforceable by purely conclusory allegations of ineffective assistance during negotiation of a plea agreement." U.S. v. Rankin, 2011 WL 2414511, *9 (E.D. Pa. June 15, 2011). As such, with respect to these claims, Claims 1 and 2, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next up is Petitioner's claim that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal when they had failed to investigate the government's sole witness ("Claim 19"):

> According to police report, the witness, a prostitute who met with defendant for fetish/fantasy sex, originally approached state law enforcement on December 28th 2012 in which said witness asked to have a '302' removed from her record. Counsel failed to learn that a '302' is an 'Involuntary Mental Health Commitment' in a mental institution.

> After interviewing with State police, witness was directed to City of Erie Police. Had counsel investigated, they would have learned that it then took the witness over a week to approach the Erie Police. Also, counsel would have seen that witness met with defendant two more times during this week to continue to engage in prostitution.

> Had counsel been effective, serious doubt into the government's sole witness would have been established. Defendant would not have agreed to the plea deal but would have insisted on going to trial.

Petitioner's Section 2255 Motion, p. 42.

The problem with Petitioners' contention is that essentially all of this information about the witness in question was already part of the record in this case and therefore, there was no

need for defense counsel to investigate the witness to find out the above-stated information prior to advising Petitioner to accept the plea deal offered. See Complaint as to Douglas Melter [ECF 1]. Moreover, assuming that this evidence would have cast some doubt on the witness's credibility, her testimony was relevant to only Count 1 of the three count indictment and her testimony was not the only evidence in support of the charge against Petitioner at Count 1 of the Indictment. See Plea Transcript, pp. 21 ("Those text messages [were forensically downloaded by Erie County detectives and] were then reviewed, to reveal a back and forth discussion between the source and the John, who was ultimately determined to be Mr. Melter. Discussions occurring over a lengthy period of time about the source essentially procuring a minor female for Mr. Melter, to either take pictures of the minor minimally clothed or naked, or for Mr. Melter to engage in sexual relations."). Consequently, Petitioner has not so shown a reasonable probability that but for defense counsel's failure to investigate the witness in question, he would not have pleaded guilty and would have insisted on going to trial. Accordingly, with respect to Claim 19, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next the Court turns to Petitioner's Claims 3-6 and 23, related claims involving Petitioner being charged at Count 3 of the Indictment against him with violating 28 U.S.C. § 922(g)(1) based on his possession of a firearm as a convicted felon. In Claims 3-5, Petitioner claims that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal when they had failed to file a motion to suppress the revolver found in Petitioner's residence ("Claim 3"), a motion to suppress the bullets found in Petitioner's residence ("Claim 4"), or a motion to suppress the receipts for ammunition that were found in Petitioner's residence ("Claim 5"). Petitioner's Section 2255 Motion, pp. 18-20. More

specifically, Petitioner contends that defense counsel should have filed motions to suppress these items because the gun was not discovered in plain view, the ammunition found did not match the gun found, and the ammunition receipt(s) were not discovered in plain view. In Claim 6, Petitioner claims that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal without having investigated that the bullets found in the Petitioner's residence are incompatible with the Harrington and Richardson .38 caliber revolver found in Petitioner's residence ("Claim 6"):

> The only evidence presented to show that the defendant had constructive possession of said revolver was the receipt and bullets.
>
> Had defense counsel investigated properly, they would have found that although the caliber of the bullets and revolver are the same, they are in fact incompatible. It is physically impossible to either close or fire the revolver with .38 cal Smith and Wesson bullets. . . .
>
> Had counsel properly investigated it would have found that no evidence exited that defendant ever had constructive possession of the revolver.

Petitioner's Section 2255 Motion, p. 21. In Claim 23, Petitioner contends that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal on the basis that a defense against Count 3 of the Indictment was impossible due to the firearm being found at Petitioner's residence, when had they been aware of the facts and understood the difference between possession and constructive possession of a firearm, they would not have advised Petitioner to plead guilty:

> A weapon in a residence does not in itself prove possession. Defendant was not the only resident living at the house, the firearm was located by law enforcement in a common area that was also a business space as it was used by defendant to run his HVAC business, the area was frequented by defendant's employees and friends, and the revolver entered defendant's residence while defendant was on vacation and defendant was arrested, miles from his residence, less than 24 hours from his return from vacation.

Id. at p. 47.

Turning first to Claims 4-6, regarding the ammunition and receipts for the ammunition found in Petitioner's residence when it was searched, they were not the only evidence that the firearm belonged to Petitioner; Petitioner's roommate and girlfriend had stated that the firearm was Petitioner's gun, a fact which Petitioner affirmed during the plea hearing. See Plea Transcript. p. 29 ("Additionally, your Honor, the FBI searched Mr. Melter's house. And the search of the house revealed a Harrington and Richardson .38 caliber revolver inside the house. Which the government would have been able to tie to Mr. Melter, not only because various witnesses said Mr. Melter was the owner of the firearm, but located during the search of Mr. Melter's residence, were at least one receipt, perhaps multiple receipts, evidence the use of a credit card that belonged to Mr. Melter to purchase ammunition which matched that firearm") and p. 32 (The Court (asking at the conclusion of the Government's lengthy colloquy of its evidence in the case): "Mr. Melter, you just heard what Attorney Trabold said by way of summary, do you agree with everything he just said?; " Petitioner: "Yes."). See also Presentence Investigation Report ¶14, to which Petitioner did not object ("The defendant's roommate and girlfriend advised investigators that the defendant had talked about how he was able to obtain the revolver and also purchase ammunition for it."). Additionally, even if the receipt was not found in plain view, Petitioner has not established that the receipt was not otherwise lawfully recovered during the execution of a duly authorized search warrant.

As for Claim 3, regarding counsel's failure to move to suppress the revolver found in Petitioner's residence when it was searched, assuming, as asserted by Petitioner, the gun was not in plain view when it was found by the authorities in his home, Petitioner has not demonstrated that the weapon was not otherwise lawfully recovered during the execution of duly authorized search warrant in the home of a known felon.

22

Turning to Claim 23, where Petitioner contends that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal on the basis that a defense against Count 3 of the Indictment was impossible due to the firearm being found at Petitioner's residence, when had they been aware of the facts and understood the difference between possession and constructive possession of a firearm they would not have advised Petitioner to plead guilty. This argument by Petitioner again ignores the critical fact that Petitioner's roommate and girlfriend had stated that the firearm was Petitioner's gun. See Plea Transcript. pp. 29 and 32 and Presentence Investigation Report ¶14, to which Petitioner did not object, *supra*.

Accordingly, for all of the above-stated reasons, with respect to Claims 3-6 and 23, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next the Court turns to Petitioner's claims that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to sign a consent to search his vehicle knowing that the police had had Petitioner sign the consent form after they already had illegally searched the vehicle and seized his computer and cell phone, which were not in plain view, from his vehicle ("Claim 7") and when they failed to file motions to suppress the illegally seized laptop ("Claim 8") and cell phone ("Claim 9"). Petitioner's Section 2255 Motion, pp. 22-27.

The problem here is that the allegations underlying these claims are inconsistent with the Government's following proffer at the plea hearing, a proffer that was followed by the Court asking Petitioner: "do you agree with everything he just said," and Petitioner answering "Yes:"

> The decision was made then by the FBI to place Mr. Melter under arrest. He then drove a short distance up 12th Street and was placed under arrest at the KFC parking lot.

> Subsequent to his arrest, Mr. Melter consented to a search of his vehicle. Inside his vehicle the Samsung Galaxy phone, which was referenced in the plea letter, and the netbook computer, were located inside his vehicle.
>
> Subsequent to his consent, the FBI obtained a search warrant for those two items. And a mini-disk located inside the netbook found in Mr. Melter's computer contained approximately, well, I should say over approximately 300 images of child pornography, and perhaps several thousand additional mages of child erotica. ...
>
> . . .
>
> The FBI also had a search warrant for Mr. Melter's cell phone, which is referenced in the plea letter.

Plea Transcript, pp. 28-29. See also Defendant's Response to Sentencing Factors, p. 4. [ECF 24] ("Further, after his arrest the Defendant consented to the search of his vehicle [and] his computers.").

A district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Booth, 432 F.3d at (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.1989)). Based upon the transcript of the plea hearing, the Court concludes that Petitioner's contrary factual allegations in his Motion that the FBI illegally entered his vehicle and seized the computer and cell phone which were not in plain view minutes after he had been secured in the back of a police vehicle and prior to Petitioner giving his consent to search to be clearly frivolous and Claims 7-9 are meritless. Accordingly, with respect to Claims 7-9, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next the Court turns to Petitioner's claim that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept a plea deal when they had failed to interview four witnesses who were willing to testify to the fact that the revolver used to charge

Defendant in Count 3 of the Indictment had been removed from a rental property and moved to Defendant's residence without his knowledge ("Claim 10") and when they advised Petitioner to accept a plea deal when they had failed to investigate the history of the revolver found in Petitioner's residence ("Claim 11"). Petitioner's Section 2255 Motion, pp. 28 and 31. In support of Claim 10, Petitioner attached two (2) signed declarations/statements to his Section 2255 Motion. See id. at pp. 29-30.

> Again, at the plea hearing the Government explained:

> Additionally, your Honor, the FBI searched Mr. Melter's house. And the search of the house revealed a Harrington and Richardson .38 caliber revolver inside the house. Which the Government would have been able to tie to Mr. Melter, not only because various witnesses said Mr. Melter was the owner of the firearm, but located during the search of Mr. Melter's residence, were at least one receipt perhaps multiple receipts, evidencing the use of a credit card that belonged to Mr. Melter to purchase ammunition which matched that firearm.

Plea Transcript. p. 29. The Court then asked, at the conclusion of the Government's lengthy colloquy of its evidence in the case: "Mr. Melter, you just heard what Attorney Trabold said by way of summary, do you agree with everything he just said?" to which Petitioner answered: "Yes." Id. at p. 32. See also Presentence Investigation Report ¶ 14, to which Defendant did not object ("The defendant's roommate and girlfriend advised investigators that the defendant had talked about how he was able to obtain the revolver and also purchase ammunition for it."). For these reasons, with respect to Claims 10 and 11, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next the Court turns to Petitioner's claim that defense counsel rendered ineffective assistance of counsel when they failed to file a pre-trial motion for severance of Counts 1 (attempt to induce a minor to engage in illegal activity) and 2 (possession of child pornography

charge) from Count 3 (convicted felon in possession of a firearm charge) ("Claim 16").
Petitioner's Section 2255 Motion, pp. 38-39.

The Federal Rules of Criminal Procedure allow charging multiple offenses in separate counts of a single indictment if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). The Federal Rules of Criminal Procedure also states: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. U.S., 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

Even assuming Petitioner is correct and that counsel could have successfully advanced a motion to sever Count 3 of the Indictment (the gun charge) from Counts One and Two of the Indictment (the attempt to entice a minor to engage in illegal activity and child pornography charges) because trying all three counts together would have presented a serious risk that the jury would not have been able to make a reliable judgment about guilt or innocence, Petitioner has not advanced any persuasive, non-conclusory basis to suggest that he would have proceeded differently, i.e. not pleaded guilty, had such a motion been filed and granted. Therefore, Petitioner has not established that he was prejudiced by any failure on defense counsel's part to file a pre-trial motion for severance. See Petitioner's Section 2255 Motion, p. 39 ("This procedural omission by defense counsel made any trial defense unfairly prejudicial. Had defense

counsel properly severed the counts against defendant, defendant would not have signed the plea deal and would have insisted on going to trial."). Accordingly, with respect to Claim 16, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Next the Court turns to Petitioner's claim that his defense counsel rendered ineffective assistance of counsel in that they completely failed to subject the Government's case "to any meaningful adversarial testing" ("Claim 17"):

> Counsel failed to properly advise defendant during questioning, failed to file a single pretrial motion, failed to file for Discovery, filed to investigate any aspect of defendant's case, failed to contact witnesses, attempted to plead defendant guilty at arraignment, waived all pretrial hearings, failed to present any defense strategy, failed to accept freely offered evidence by the prosecution prior to the start of arraignment, failed to properly inform defendant of collateral consequences of plea deal, failed to negotiate a meaningful plea bargain, failed to review Pre-Sentence Report with defendant, made no objections to PSI, turned over incriminating psych report to prosecution, failed to research any mitigating evidence and failed to file a notice of appeal.

Petitioner's Section 2255 Motion, pp. 40. Again, Petitioner's allegations are vague, conclusory, and unsupported by facts, and Petitioner fails to show how any of this alleged conduct on the part of defense counsel prejudiced him. Accordingly, with respect to Claim17, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Finally, the Court will address Petitioner's claims that his defense counsel rendered ineffective assistance of counsel when they advised Petitioner to accept the plea deal because by entering into the plea agreement he would have an offense level or 32 or 33 and a criminal history IV, such that his sentencing guideline range would be 151 to 210 months when, in fact, this was not the applicable sentencing guidelines range ("Claim 15"). Petitioner's Section 2255 Motion, p. 36-37.

As explained by Chief Judge Conti in <u>Williams v. U.S.</u>, 2014 WL 4060263 (W.D. Pa.

Aug. 14, 2014):

> The Court of Appeals for the Third Circuit has 'long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted. '<u>United States v. Shedrick</u>, 493 F.3d 292, 299 (3d Cir. 2007); <u>United States v. Jones</u>, 336 F.3d 245, 254 (3d Cir. 2003); <u>Sepulveda v. United States</u>, 69 F.Supp.2d 633, 641 (D.N.J. Sept. 28, 1999) (*citing* <u>Masciola v. United States</u>, 469 F.2d 1057, 1059 (3d Cir. 1972)). A defendant's right to be apprised of the court's sentencing options is set forth in Federal Rule of Criminal Procedure 11(c)(1). FED. R. CRIM. P. 11(c)(1). Where a district court, at the plea colloquy, advises a defendant of both the minimum and maximum potential sentence under the statute, and explains the guidelines sentencing process, including that the court has discretion in sentencing, and where a defendant confirms under oath that there are no other agreements or promises regarding his potential sentence, there can be no ineffective assistance of counsel. <u>Shedrick</u>, 493 F.3d at 299; see <u>United States v. Mustafa1</u>, 238 F.3d 485, 492 (3d Cir. 2001) ('[A]ny alleged misrepresentations that Mustafa's former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.').

<u>Williams</u>, 2014 WL 4060263 at *17. See also <u>U.S. v. Bui</u>, 795 F.3d at 367 (citing <u>Shedrick</u>, 493

F.3d at 299) ("an erroneous sentencing prediction by counsel is not ineffective assistance of

counsel where ... an adequate plea hearing was conducted."). Accepting as true Petitioner's

contention that his defense counsel incorrectly advised Petitioner that by entering into the plea

agreement, he would have an offense level or 32 or 33 and a criminal history IV, such that his

sentencing guideline range would be 151 to 210 months, conduct that would fall below an

objective standard of reasonableness, Petitioner cannot show prejudice because the Court

conducted an adequate change of plea hearing. At the March 20, 2013 hearing, the Court

advised Mr. Melter about the minimum and maximum potential sentences under the statues,

explained the guidelines sentencing process, including that the guidelines are advisory and a

court has discretion with respect to arriving at a sentence, and that his guilty plea would stand,

even if he received a more severe sentence than he had anticipated. See Plea Transcript, pp. 12-

14, 19-20. Petitioner confirmed that he understood these matters. Id. The Court also stated: "Has anything I've said here today suggested to you what your actual sentence will be?" to which Petitioner replied: "No." Id. at p. 20. Accordingly, with respect to Claim18, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

**c. Petitioner's Ineffective Assistance of Counsel Claims Related to Sentencing-Claims 18 and 21.**

Finally, Petitioner argues that his defense counsel rendered ineffective assistance of counsel related to his sentencing when: (1) they failed to discuss or review the Presentence Report with Petitioner during the time allotted for making objections such that "[i]t was only after receiving his copy of the PSI that defendant learned his true sentencing exposure ("Claim 18") and (2) without obtaining permission, turned over Petitioner's psychiatric report to the prosecution ("Claim 21"). Petitioner's Section 2255 Motion, pp. 41 and 44.

Turning to Petitioner's Claim 18, even assuming that defense counsel failed to discuss or review the Presentence Report with Petitioner during the time allotted for making objections, Petitioner cannot establish any resulting prejudice. Specifically, Petitioner states: "[i]t was only after receiving his copy of the PSI that defendant learned his true sentencing exposure (see claims 14 and 15). Had defendant been given the opportunity, he would have insisted on a hearing to withdraw his plea due to counsel's grossly inaccurate information concerning the plea agreement." Motion to Vacate, p. 41. As previously stated, the Court conducted a plea hearing that sufficiently informed Petitioner of the minimum and maximum potential sentences under the applicable criminal statues, and explained the guidelines sentencing process, including that the guidelines are advisory and that a court has discretion with respect to arriving at a sentence. The

Court also stated: "Do you understand that if the sentence is more severe that you expected, you will still be bound be your guilty plea and you will have no right to withdraw it?" to which Petitioner replied: "Yes." Plea Transcript, pp. 19-20. Based on this record, the Court would not have granted a request by Petitioner to withdraw his plea due to any incorrect statement by defense counsel prior to the change of plea hearing as to Petitioner's offense level, criminal history score, and/or advisory guidelines sentencing range. Accordingly, with respect to Claim 18, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

Lastly, as to Petitioner's claim 21, that defense counsel rendered ineffective assistance of counsel when, without permission, they turned over Petitioner's psychiatric report to the Government, again Petitioner cannot establish any resulting prejudice. While the prosecution referenced part of the report in his sentencing colloquy to the Court, ultimately the Court sentenced Petitioner to the low end of the applicable Guidelines range and did not refer to anything contained in the report in rendering its judgment. Accordingly, with respect to Claim 21, Petitioner has failed to establish that enforcing the collateral waiver contained in Petitioner's Plea Agreement would work "a miscarriage of justice."

III. **CONCLUSION.**

Having found that Petitioner's waiver of his rights to file a collateral appeal was entered into knowingly and voluntarily, no specific exception set forth in the plea agreement applies, and enforcement of the waiver would not work a miscarriage of justice, the Court concludes that Petitioner's waiver of his collateral appeals rights is enforceable. Petitioner's Section 2255 Motion shall be denied.

## IV. CERTIFICATE OF APPEALABILITY

No certificate of appealability should issue in this case. A petitioner may only appeal "the final order in a proceeding under section 2255" if a judge "issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, when a petition is denied on procedural grounds, a certificate of appealability may issue only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id. at 484. Jurists of reason would not debate the effect of Mr. Melter's § 2255 waiver or the lack of merit in his ineffective assistance of counsel claims. Therefore, no certificate of appealability will issue.

An appropriate Order will follow.

December _7_, 2016

BY THE COURT,

_[signature]_

Mark R. Hornak
United States District Judge

All counsel of record

Douglas Melter
33976-068
FCI Sheridan
P.O. Box 5000
Sheridan, OR 97378